IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORGE GOMEZ,                :<br>    Petitioner            :<br>                             :<br>    v.                       :<br>                             :<br>WARDEN FCI ALLENWOOD,        :<br>    Respondent               : | No. 1:20-cv-00455<br><br>(Judge Kane) |

**MEMORANDUM**

On March 17, 2020, pro se Petitioner Jorge Gomez ("Petitioner"), who is currently confined at the Federal Correctional Institution Allenwood in White Deer, Pennsylvania ("FCI Allenwood"), initiated the above-captioned case by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the decision of a Disciplinary Hearing Officer ("DHO") who found him in violation of Code 208, interfering with a locking device, and Code 224A, attempted assault without serious injury. (Doc. No. 1.) Following an Order to show cause (Doc. No. 6), Respondent filed a response, contending that Petitioner "was afforded all the required due process protections throughout the disciplinary process" (Doc. No. 8 at 4). Petitioner filed his traverse on May 13, 2020. (Doc. No. 9.) Accordingly, Petitioner's § 2241 petition is ripe for disposition.

**I.   BACKGROUND**

On May 5, 2019, at approximately 6:52 a.m., Officer Cian was making rounds of Unit 3A, Petitioner's housing unit, to provide the morning meal. (Doc. No. 8-1 at 11.) Officer Cian approached Petitioner's cell and asked that he and his cellmate "remove whatever they had blocking the cell back window so [he] was able to view the inside of the cell prior to opening the food slot." (Id.) Petitioner responded, "I ain['t] takin[g] shit down, it[']s too early for your bullshit." (Id.) Officer Cian then ordered Petitioner to remove the blanket from the cell window,

and Petitioner ultimately complied with this directive. (Id.) Officer Cian "then asked [Petitioner] to turn his cell light on and [Petitioner] then repeatedly began to turn the light on and off." (Id.) When Officer Cian opened the food slot, Petitioner attempted to strike his right leg with a closed fist. (Id.) Petitioner "refused several orders to remove his hand from the food slot so [Officer Cian] could secure the cell." (Id.) Officer Cian prepared Incident Report #3253010, charging Petitioner was violations of Code 208, blocking any locking device; Code 224A, attempted assault; Code 312, insolence; and Code 307, refusing an order. (Id.)

A copy of the Incident Report was provided to Petitioner on May 5, 2019. (Id.) Lieutenant Olshefski investigated the incident that same day. (Id. at 12.) Petitioner was advised of his rights and stated that he understood them. (Id.) Petitioner also indicated that he understood the Incident Report as written and the nature of the charges against him. (Id.) Lieutenant Olshefski determined that Petitioner would remain in the Special Housing Unit ("SHU") pending disposition of the charges. (Id.) He referred the matter to the Unit Discipline Committee ("UDC") for further proceedings. (Id.) On May 10, 2019, Petitioner appeared before the UDC, which referred the Incident Report to the DHO for further proceedings. (Id. at 11.)

Petitioner appeared before the DHO on May 22, 2019. (Id. at 6.) Mr. Nicholas appeared as his staff representative. (Id.) At the beginning of the hearing, the DHO advised Petitioner of his rights, and Petitioner provided the following statement: "I turned the lights on and off when the officer asked me to; I turned them off because my cell mate was sleeping. I asked for the lieutenant and the officer shoved the food tray in the slot and I admit I stuck my arm through the food slot." (Id.) Petitioner also provided a written statement, maintaining that "the officer cursed at him and that he never swung at the officer." (Id.)

The DHO also noted that there had been a delay in the discipline process because the Incident Report had been referred to the FBI and U.S. Attorney's Office for criminal prosecution. (Id.) The "agency released the report back to BOP custody for disciplinary processing." (Id.) The DHO "did not believe this delay infringed upon [Petitioner's] ability to defend himself against the charged behavior, nor was it addressed . . . as an issue." (Id.) Petitioner called his cellmate as a witness, and his cellmate stated: "I was sleeping and heard the officer say to [Petitioner] to calm down and to turn on the light. The officer told me to climb down from the bunk and I noticed the food tray on the floor. [Petitioner] was saying he wanted to see a lieutenant and wanted a BP-8." (Id.)

The DHO found the charges of Codes 208 and 224A to be supported by the greater weight of the evidence. (Id. at 7.) In doing so, the DHO considered the Incident Report, the investigation, memoranda prepared by various officers concerning the event, and photographs taken by Lieutenant Olshefski. (Id.) The DHO "believed the information provided by the staff member involved in this case, as [he] derived no known benefit by providing false information." (Id. at 8.) The DHO sanctioned Petitioner with disallowance of twenty-seven (27) days of good conduct time, eight (8) months' loss of visitation and phone privileges, and thirty (30) days of disciplinary segregation. (Id.) The DHO issued his report on May 30, 2019, and a copy was delivered to Petitioner that same day. (Id. at 9.)

Petitioner then filed the instant § 2241 petition. (Doc. No. 1.) In his petition, Petitioner argues that the charges should have been dismissed because the officer involved presented false information. (Id. at 7.) As relief, Petitioner asks that the Court "[r]emand this incident back to [the] DHO in FCI Allenwood Medium to [e]xpunge this charge from [his] prison record" and to "[r]einstate all sanction[s] pertaining" to the charges. (Id. at 8.)

**II.    DISCUSSION**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause or from statutory law. See Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there may be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. See id. at 557. Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest for purposes of the case at bar.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison that may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. See id. at 563-67. The Supreme Court has held that the standard of review applicable to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the Court must reject any evidentiary challenges by the plaintiff. See Hill, 472 U.S. at 457. The Hill standard is minimal and does not require examination of the entire record,

an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. See Thompson v. Owens, 899 F.2d 500, 501-02 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. See 28 C.F.R. § 541.5. Under the regulations, an inmate "ordinarily receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." See id. § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends, or holidays. See id. § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. See id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. See id.

A DHO "will only conduct a hearing on the incident report if referred by the UDC." See 28 C.F.R. § 541.8. An inmate will receive written notice of the charges twenty-four (24) hours before the DHO hearing unless the inmate waives the notice requirement, in which case the DHO

may conduct the hearing sooner. See id. The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. See id. After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review, and disposition. See id. If an inmate is found to have committed a prohibited act, the DHO may impose any of the available sanctions listed in Table 1 and 2 of § 541.3. See id. Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. See id.

    **A.    Whether Petitioner Received His Due Process Rights**

The Court concludes that, contrary to Petitioner's arguments, he received his procedural due process rights consistent with Wolff and the BOP regulations. The record reflects that Petitioner received a copy of the Incident Report on May 5, 2019, and the hearing before the DHO was held on May 19, 2019. (Id. at 6.) The record also demonstrates that Petitioner was advised of his rights, had Mr. Nicholas appear on his behalf as his staff representative, and called his cellmate as a witness on his behalf. (Id. at 6-7.) The DHO noted the delay in the disciplinary process because the Incident Report had been referred to the FBI and U.S. Attorney's Office for possible criminal prosecution, but "did not believe this delay infringed upon [Petitioner's] ability to defend himself against the charged behavior, nor was it addressed . . . as an issue." (Id. at 6.) Finally, Petitioner received a copy of the DHO's written decision, which included a review of the evidence relied upon and the rationale behind the disciplinary action, on May 30, 2019. (Id. at 9.)

In his traverse, Petitioner asserts that his due process rights were violated because his request that surveillance video footage of the incident be viewed was denied. (Doc. No. 9 at 1-3.) Petitioner maintains that had the DHO viewed such footage, he "would not be here in this last stage of proceeding." (Id. at 2.) Nothing in the record before the Court, however, supports Petitioner's assertion that his request for surveillance video was denied. In his decision, the DHO specifically indicated that "no documentary evidence was provided for consideration." (Doc. No. 8-1 at 6.) Petitioner has not cited any evidence to the Court that suggests otherwise. Accordingly, based on the record before it, the Court finds that Petitioner received all the due process protections to which he was entitled. See Laor v. Fed. Bureau of Prisons, No. 08-3532 (RBK), 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was not denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied").

### B. Whether the DHO's Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, the DHO stated the following in his decision finding Petitioner guilty of Code 208, interfering with a locking device, and Code 224A, attempted assault without serious injury:

> During this discipline hearing, the following information was evidentiary and documented by the DHO in his findings. [Petitioner's] involvement in the incident, as noted in Section 11 of Incident Report #3253010, as provided by Recreation Specialist Cian, was reviewed. Paraphrased, Cian writes: On 05/05/19, at 6:52 am, while feeding the morning meal in Unit 3A, I approached Cell 108 and asked [the] inmates [to] remove whatever they had blocking the cell back window so I was able to view the inside of the cell prior to opening the food slot. [Petitioner] stated "I ain['t] takin[g] shit down, it['s] too early for your bullshit." I then ordered him to remove the blanket from the cell window, which he then complied. I then asked him to turn his cell light on and [Petitioner] then repeatedly began to turn the light on and off. When opening the food slot the inmate attempted to strike my right leg

> with a closed fist. [Petitioner] refused several orders to remove his hand from the food slot so I could secure the cell. I then contacted the Lieutenant['s] office.
>
> Inculpatory evidence in the form of a memorandum from Officer Hummel dated 5/5/19 corroborated the evidence cited in this report. Officer Hummel writes: On 5/5/19 at 6:52 am I was feeding the morning meal in Unit 3A. Officer Cian and I were feeding cell 108. The cell was dark and Officer Cian ordered the inmates to remove their sheet from the window so we could see in the cell. [Petitioner] became disruptive and sated, "It's too early for your bullshit, feed me and let us go back to sleep." He then complied with our requests to take a blanket down from the back cell window. It was still dark in the cell so Office[r] Cian asked him to turn on the cell light to which he complied. When Officer Cian opened up the cell food slot, [Petitioner] escalated his disruptive behavior and started to turn the light on and off stating, "can you see me []now" and began laughing and then with a closed fist attempted to strike Office[r] Cian in his leg. We both backed away from the food slot and ordered [Petitioner] to put his hands back in the cell so we could secure the food slot.
>
> Inculpatory evidence in the form of a memorandum from Mr. Divers dated 5/5/19 corroborated the evidence cited in this report. Mr. Divers writes: On 5/5/19 at 6:52 am Mr. [Cian] requested Ops. Lt. to report to Unit 3A. At this time I went to 3A. As I entered, I observed an inmate with [an] arm out of the food slot. Next I approached the cell and identified [Petitioner] as the inmate with [his] arm out of the slot. I ordered [Petitioner] to remove [h]is arm from the slot and to move back in the cell. [Petitioner] complied.
>
> The DHO believed the information provided by the staff member involved in this case, as [he] derived no known benefit by providing false information. The DHO finds the charges for codes 224A and 208 to be supported in this case based upon the greater weight of the evidence cited in this report. The DHO finds the actions by [Petitioner] prevented staff from securing the food slot. His actions also mimicked the attempt[] to assault staff by striking [him] in the lower torso area.
>
> Upon questioning by the DHO, [Petitioner] denied the charge. He elaborated upon his plea by stating[] he only stuck his arm out through the slot. After the consideration of evidence documented above, the DHO has drawn the conclusion [that] the greater weight of the evidence, listed in the paragraphs above, support(s) the finding [that Petitioner] committed the prohibited act(s) of Assaulting W/O Serious Injury (Attempt) and Interfering with a Locking Device, Code(s) 208 and 224A, on 5/[5]/19, at or about 6:52 am, in Unit 3A Cell 108, at FCI Allenwood.

(Doc. No. 8-1 at 7-8.) Moreover, the DHO explained the imposed sanctions, stating:

> [Petitioner's] attempted assault of a staff member indicates his proclivity for violence. Attempting to strike a staff member threatens the safety of all involved and severely hampers the ability of the victim to effectively maintain their area of

8

>responsibility. This type of behavior will not be tolerated. [Petitioner's] tampering with a locking device threatened the orderly running and potentially the safety of staff and inmates. In a correctional setting, locks are maintained to insure unauthorized persons remain in, or out, of a specified area. The inmate's behavior in this case [breached] that defense, producing a lack of security which could have resulted in harm to staff or inmates due to unrestricted access. Accordingly, Disciplinary Segregation and the Disallowance of Good Conduct Time are sanctioned to punish [Petitioner] for his behavior, while the Loss of Privilege (Phone and Visit) are sanctioned in an effort to deter him from similar behavior in the future. The DHO finds the charge for code 224A and 208 to warrant the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

(Id. at 9.)

Petitioner appears to suggest that the evidence was insufficient because the officer involved provided false information. (Doc. No. 1 at 7.) However, when an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." See Speight v. Minor, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting Hill, 472 U.S. at 455-56). Moreover, Petitioner raised this argument by providing a written statement, maintaining that "the officer cursed at him and that he never swung at the officer." (Doc. No. 8-1 at 6.) Petitioner's claim of false information "is not sufficient to establish a due process violation [because he had] the opportunity to rebut the allegedly false accusations and evidence." See Willis v. Zickefoose, No. 11-2077 (NLH), 2012 WL 2076827, at *9 (D.N.J. June 8, 2012); see also Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002) (noting that "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim"). Thus, contrary to Petitioner's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of violating Codes 208 and 224A. See Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013) (noting

9

that a court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause").

## III. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) will be denied. An appropriate Order follows.